UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NATIONWIDE BOOK INDUSTRIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 11-12195-JGD |
| A&S BOOKSELLERS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND
ORDER ON DEFENDANT ANDREW WEISS'S
MOTION FOR SUMMARY JUDGMENT**

May 22, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

This action arises out of a series of purchase orders under which the plaintiff,

Nationwide Book Industries, LLC ("Nationwide"), agreed to sell more than 216,000

books to the defendant, A&S Booksellers, Inc. ("A&S").[1]  Nationwide claims that it

continued to fill orders and ship books to A&S based on repeated assurances from A&S'

principal, defendant Andrew Weiss ("Weiss"), that A&S' business was prospering and

that payment to Nationwide would be made in full.  It further claims that Weiss's

representations were false, and were made only as a pretense to obtain additional books

from the plaintiff without paying for them.  By its Complaint, Nationwide has asserted

---

[1]  A&S Booksellers, Inc. is also known as "A&S Bargain Books," "A+S Booksellers,"
"A+S Crown Books," "Crown Books," and "Century City/Crown Books."  Nationwide has
named each of A&S's "a/k/a" variants as a defendant in this case.

claims against A&S for breach of contract (Count I) and unfair business practices (Count II).  It has also asserted a claim against Weiss for fraudulent pretense and deception, by which A&S is seeking to hold Weiss liable under  Mass. Gen. Laws ch. 93A ("Chapter 93A") (Count III).   On January 13, 2012, A&S filed for Chapter 11 bankruptcy.  Accordingly, Nationwide's claims against that defendant are currently stayed.

The matter is presently before the court on "Defendant Andrew Weiss's Motion for Summary Judgment" (Docket No. 23), by which Weiss is seeking summary judgment, pursuant to Fed. R. Civ. P. 56, on Nationwide's claim against him under Chapter 93A.  The plaintiff opposes the motion and urges the court to grant summary judgment in its favor, even absent a motion, pursuant to Fed. R. Civ. P. 56(f)(1).  For the reasons that follow, this court finds that there are genuine issues of material fact which preclude summary judgment in favor of either party.  Accordingly, Weiss's motion for summary judgment is DENIED, and this court declines to grant summary judgment in favor of the non-moving party under Rule 56(f)(1).

## II.  DISCUSSION

### A.    Summary Judgment Standard of Review

Summary judgment is appropriate when the moving party shows, based on the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting

Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is material only if it

possesses the capacity to sway the outcome of the litigation under the applicable law."

Id. (quotations, punctuation and citations omitted).

      The moving party bears the initial burden of establishing that there is no genuine

issue of material fact.  See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st

Cir. 2010).  If that burden is met, the opposing party can avoid summary judgment only

by providing properly supported evidence of disputed material facts that would require

trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).  Accordingly, "the

nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but

must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d

202 (1986)).  The court must view the record in the light most favorable to the non-

moving party and indulge all reasonable inferences in that party's favor.  See Vineberg,

548 F.3d at 56.  "If, after viewing the record in the non-moving party's favor, the Court

determines that no genuine issue of material fact exists and the moving party is entitled to

judgment as a matter of law, summary judgment is appropriate."  Walsh v. Town of

Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

      Federal Rule of Civil Procedure 56(f)(1) permits the court to "grant summary

judgment for a nonmovant[.]"  "Thus, the law in the First Circuit is 'well established' that

a party that moves for summary judgment runs the risk that 'the court may grant summary

judgment *sua sponte* against the movant.'"  Banco do Brasil, S.A. v. 275 Washington St.

Corp., 889 F. Supp. 2d 178, 187 (D. Mass. 2012) (quoting Rothschild v. Cree, Inc., 711

F. Supp. 2d 173, 195 (D. Mass. 2010)).  However, in the instant case, this court finds that

disputed issues of material fact preclude summary judgment in favor of either party on

Count III of Nationwide's complaint.

### B.   Weiss's Motion for Summary Judgment

By its claim against Weiss, Nationwide is seeking to hold Weiss liable under

Chapter 93A based on a series of representations in which the defendant allegedly stated,

in essence, that A&S' business was good and prospering, and that A&S would make full

payment for books that it had ordered from the plaintiff.  According to Nationwide,

Weiss's statements were false because Weiss knew but did not disclose that A&S was in

financial distress and was unable to pay for the orders.  (See Bredmehl Decl., Ex. 1 at pp.

1-4).[2]  Under Massachusetts law, common law claims for deceit or fraudulent misrepre-

sentation "often can form the basis for a Chapter 93A claim."  Rodi v. S. New England

Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004).  See also Datacomm Interface, Inc. v.

Computerworld, Inc., 396 Mass. 760, 778, 489 N.E.2d 185, 197 (1986) ("it is clear that

common law actions for fraud and deceit are within the contemplation of an 'unfair act'

under [Chapter 93A]").  The fundamental issue raised by Weiss's motion for summary

judgment is whether Nationwide has presented sufficient evidence to support its under-

lying claim of fraudulent misrepresentation.

---

[2]  The Declaration of Erez Bredmehl ("Bredmehl Decl.") is attached to Nationwide's
Opposition to Defendant's Motion for Summary Judgement (Docket No. 26).

To prevail on a claim for fraudulent misrepresentation, the plaintiff "must establish that the defendant 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458, 772 N.E.2d 1054, 1066 (2002) (quoting Danca v. Taunton Sav. Bank, 385 Mass. 1, 8, 429 N.E.2d 1129 (1982)) (additional citation omitted).  This court finds that when the record is viewed in favor of the plaintiff, it supports a claim for fraudulent misrepresentation.  Accordingly, Weiss is not entitled to judgment as a matter of law.

### i.      Weiss's Challenge to Alleged Non-Disclosures

Weiss argues, as an initial matter, that Nationwide cannot prevail on its claim to the extent it is based on Weiss's failure to disclose facts regarding the financial condition of A&S because Weiss had no duty to disclose such information to the plaintiff.  (Def. Mem. (Docket No. 24) at 8-9).  A claim of "nondisclosure can be actionable only where there is a 'duty' to disclose, and a duty arises only in a number of discrete situations[.]" Greenery Rehab. Group, Inc. v. Antaramian, 36 Mass. App. Ct. 73, 78, 628 N.E.2d 1291, 1294 (1994).  Significantly, no such duty arises where the parties are represented by "sophisticated businessmen, [who are]  active and experienced in the area, [and are] dealing at arm's length without any fiduciary or confidential relationships or expecta-tions."  Lily Transp. Corp. v. Royal Institutional Servs., Inc., 64 Mass. App. Ct. 179, 202, 832 N.E.2d 666, 684 (2005) (Lawrence, J., concurring in part and dissenting in part).  See

also <u>Greenery Rehab. Group, Inc.</u>, 36 Mass. App. Ct. at 78, 628 N.E.2d at 1294 (no duty to disclose where parties to agreement were sophisticated businessmen active in real estate transactions). Because there is no dispute that Weiss and his counterpart at Nationwide, Erez Bredmehl ("Bredmehl"), were sophisticated business people who were dealing at arm's length during the course of their communications concerning the book orders at issue in this case (<u>see</u> <u>generally</u> Bredmehl Decl.), Weiss had no duty to disclose A&S' deteriorating financial condition. <u>See</u> <u>Berkshire-Westwood Graphics Group, Inc.</u> <u>v. Davidson</u>, 73 Mass. App. Ct. 1128, 903 N.E.2d 605, 2009 WL 735074, at *1 (Mar. 23, 2009) (unpub. op.) ("Given that the parties were sophisticated business people involved in an adversarial business relationship, [the defendant] had no duty to disclose the full extent of [his company's] deteriorating financial condition"). Therefore, as Nationwide tacitly conceded, its claim cannot be based on any alleged non-disclosures about A&S' financial circumstances. (<u>See</u> Pl. Opp. Mem. (Docket No. 26) at 7).

Nevertheless, Nationwide argues that its claim against Weiss is based on the defendant's affirmative statements regarding the growth and prosperity of his company, as well as his affirmative assurances that Nationwide would receive payment for A&S' book orders. (<u>Id.</u>). While Weiss raises a number of arguments in support of his contention that Nationwide has failed to state a claim, for the reasons that follow, Weiss has not shown that he is entitled to summary judgment with respect to these claims.

### ii.    <u>Weiss's Challenge to the Alleged Affirmative Statements</u>

There is evidence in the record that during the time period between April 2011 and October 2011, Weiss repeatedly assured Bredmehl that A&S' business was good and that payment to Nationwide would be forthcoming.  For example but without limitation, there is evidence that during his conversations with Bredmehl, Weiss made the following representations:

- In April 2011, while placing a book order with Bredmehl, Weiss insisted that his business was prospering and growing, and that payment was not even a question.  Additionally, Weiss told Bredmehl that he wanted to place a substantial order to help stock A&S' new stores, and he specifically promised to make full payment within 90 days.

- In mid-June 2011, when Weiss placed some additional orders with Nationwide, Weiss told Bredmehl that payment was forthcoming on his outstanding invoices.  In particular, he informed Bredmehl that A&S' business was good, and that payment on the outstanding invoices would be made within one month.

- In July 2011, when Nationwide asked Weiss to make a substantial payment for A&S' outstanding orders, Weiss repeatedly assured Bredmehl that all was well with his company, and that his cash flow was slowed due to store expansion.  He also declined Bredmehl's offer of a payment plan, and promised repeatedly to bring A&S' account current.

- On October 7, 2011, Bredmehl spoke to Weiss about A&S' outstanding balance of over $248,000.  Weiss again declined Bredmehl's offer of a payment plan, and told Bredmehl repeatedly that Halloween sales in A&S' stores were robust.  Weiss also assured Bredmehl that A&S' entire account would be paid before the end of the year.

(Bredmehl Decl. ¶¶ 3, 5-9; see also Bredmehl Decl., Ex. 1 at 2-4).  Nationwide asserts that these and other similar statements were false and deceitful because Weiss knew at

the time he made them that A&S was insolvent and had no ability to pay for the orders. (See Pl. Opp. Mem. at 2-5).

Weiss argues that to the extent Nationwide's claims are based on such affirmative statements, they are not actionable because they concern matters of opinion, estimate or judgment.  (Def. Mem. at 9-10).  "As a general proposition, in Massachusetts 'only statements of fact are actionable; statements of opinion cannot give rise to a deceit action.'" NPS LLC v. Ambac Assurance Corp., 706 F. Supp. 2d 162, 171 (D. Mass. 2010) (quoting Cummings v. HPG Int'l, Inc., 244 F. 3d 16, 21 (1st Cir. 2001)).  "Statements of opinion and belief, however, may be actionable if such an 'opinion is inconsistent with facts known at the time they are made.'"  Id. (quoting Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 809 N.E.2d 1017, 1030 n.24 (2004)).  See also Rodi, 389 F.3d at 14 (explaining that "it is an actionable misrepresentation for a car dealer to tell a buyer that he 'believes' a vehicle is in 'good' condition when he knows that it has significant mechanical defects").

To the extent Weiss's challenged statements constitute judgments or opinions about A&S' financial condition and ability to pay, a factfinder could conclude that those statements were at odds with facts that were known to Weiss at the time the statements were made.  Significantly, the record contains evidence from A&S' own records which, when viewed in the light most favorable to Nationwide, shows that at the time Weiss made the alleged statements, his business was heavily in debt and was failing.  In particular, evidence contained in A&S' bankruptcy filings from January 2012 show that

8

A&S had unpaid debts going back as far as 2008, when A&S failed to pay over $55,000 to Easter Unlimited, Inc., one of its Halloween goods suppliers.  (See Bredmehl Decl., Ex. 3 at 17).  The bankruptcy records also show that by the end of 2010, A&S' outstanding debts included but were not limited to, over $210,000 in unpaid sales taxes owed to the State of California, over $2,000 in back rent owed on property in San Diego, and over $68,000 owed to Jakks Pacific, Inc., another Halloween goods supplier.  (See Bredmehl Decl., Ex. 3 at 14, 17-18).  Furthermore, A&S' financial records demonstrate that by year end 2010, A&S had unpaid loans of over $1 million and negative assets approaching $450,000.  (See Bredmehl Decl.¶ 18; Weiss Aff., Ex. A at 2, 8).[3]  They further show that between 2009 and the end of 2010, A&S had experienced a significant drop in its per store revenue, from $247,766 in 2009 to $174,931 in 2010.  (See Bredmehl Decl. ¶ 22; Weiss Aff., Ex. A at 4).  These facts are inconsistent with Weiss's assurances that his business was good and was prospering, and that A&S had the ability to pay Nationwide in full.  Moreover, as the President of A&S, Weiss would have been familiar with the company's financial records.  (See Weiss Aff. ¶ 1).  Therefore, Weiss has not shown that his statements are not actionable as a matter of law.

Weiss also argues that statements about future intentions cannot support a misrepresentation claim, and that therefore, his promises of future payment are not actionable.  (See Def. Mem. at 9, 11).  The general rule in Massachusetts is "that

---

[3]  The Affidavit of Andrew Weiss ("Weiss Aff.") is attached to Defendant Andrew Weiss's Motion for Summary Judgment (Docket No. 23).

statements promissory in nature and statements of conditions to exist in the future are not actionable." Bolen v. Paragon Plastics, Inc., 754 F. Supp. 221, 226 (D. Mass. 1990). "There is an important exception made to this rule, however, if at the time the defendant made the statement, he or she did not intend to carry out the promise." Id. That is because "[u]nder Massachusetts law, lack of present intent constitutes a misrepresentation of a material fact." Id. This court finds that there is evidence in the present case to support Nationwide's claim that Weiss did not intend to pay at the time he made the alleged statements.

Weiss argues that Nationwide cannot rely on the fact of A&S' 2012 bankruptcy to demonstrate that Weiss had an intent to defraud at the time he made the alleged promises of payment in 2011. (Def. Mem. at 13-14). Relying on Watson v. Silsby, 166 Mass. 57, 43 N.E. 1117 (1896), Weiss argues that "mere insolvency of the buyer, with a probability that he will not be able to pay for the property, although known to him and not disclosed to the seller, will not defeat the contract, if the purchase is made with a hope to be able to pay, and with an intention to pay, if possible." (Id. (quoting Watson, 166 Mass. at 58, 43 N.E. at 1117)). However, Watson does not support Weiss's motion for summary judgment. Rather, it supports a conclusion that the issue of fraudulent intent must be resolved at trial.

In Watson, the Supreme Judicial Court reversed the trial court's decision to direct a verdict for the defendant on the ground that there was no evidence to support the plaintiff's claim that the defendant had purchased goods with an intent not to pay. Id. at 61,

10

43 N.E. at 1118.  Significantly, although the Court found that a defendant's insolvency alone would not be sufficient to prove fraud, it noted that "a purchase of property without any reasonable expectation of paying for it may be evidence of an intention to obtain it without paying for it at any time[,]" and that "[a] purchase with such a preconceived intention is a fraudulent act."  Id. at 59, 43 N.E. at 1117.  Given the fact that the defendant in that case had been insolvent for a long time, and that questions of intent are "ordinarily to be inferred from conduct and circumstances[,]" the Court determined that the question of fraud should have been submitted to the jury.  Id. at 59-61, 43 N.E. at 1118.

Here, as in Watson, the record contains evidence from which a factfinder could conclude that Weiss purchased goods from Nationwide without any reasonable expectation of paying for them.  In particular, the record includes facts showing that A&S filed for bankruptcy within less than three months after placing its last order with Nationwide in October 2011.  (See Bredmehl Decl. ¶ 10; Weiss Aff. ¶ 13).  Moreover, evidence from A&S' bankruptcy records and financial statements indicates that the A&S had been in debt for years, that its sales were plunging, and that by the end of 2010, it had negative assets approaching $450,000.  (See Bredmehl Decl. ¶¶ 17-18, 22).  Such facts support Nationwide's assertion that Weiss intentionally misled the plaintiff about the status of his business so that he could obtain books for which A&S could not afford to pay.  Accordingly, Weiss's alleged promises of payment to Nationwide are actionable.

Weiss nevertheless insists that it is unreasonable for the plaintiff to assert that he was acting with a specific intent to defraud.  (Def. Mem. at 15).  Specifically, Weiss points to evidence showing that even in 2011, when A&S' per store revenues dropped to $145,015, the company's stores produced a total income stream of $3.5 million.  (Id.).  He also points to evidence showing that A&S made six payments to Nationwide, totaling tens of thousands of dollars, and contends that such evidence belies any assertion that Weiss had no intent to pay at the time he placed the orders.  (Id.).

Again this court finds that Weiss's arguments are insufficient to support judgment as a matter of law in his favor.  "[T]he First Circuit has advised caution when disposing of the state of mind issue on summary judgment."  Bolen, 754 F. Supp. at 226.  Although evidence that A&S was able to generate significant income and make certain payments to Nationwide supports Weiss's assertion that he acted without any fraudulent intent, in light of the evidence concerning the extent of A&S' troubled financial condition, this court finds that the issue of Weiss's intent involves a question of fact that cannot be resolved on summary judgment.

### iv.   Reasonable Reliance

The defendant also contends that Nationwide cannot maintain a claim based on fraudulent misrepresentation because it cannot establish that it reasonably relied on Weiss's statements.  (Def. Mem. at 12-13).  "Under Massachusetts law, the reasonable-ness of a party's reliance ordinarily constitutes a question of fact for the [factfinder]."  Rodi, 389 F.3d at 16.  The record in this case does not compel an alternative conclusion.

Weiss argues, as an initial matter, that the general nature of his alleged statements, such as his statements that "business was good" and that his business was "prospering and growing and payment was not even a question" rendered any reliance on them unreasonable. (Def. Mem. at 12). This court disagrees. The record shows that Bredmehl had known Weiss and had done business with him for many years prior to 2011. (Bredmehl Decl. ¶ 2). According to Bredmehl, Weiss had frequently been slow to pay for goods, but he had always conducted himself in a straightforward manner and had always made payment in full in the past. (Id.). Accordingly, at the time Weiss made the alleged statements to Bredmehl in 2011, Bredmehl trusted Weiss and considered his representations to be honest and reliable. (Id.). Under such circumstances, this court cannot conclude that Bredmehl's reliance on Weiss's general statements as to the financial soundness and growth of his business, and his repeated assurances that payment would be made, was unreasonable as a matter of law.

The defendant also asserts that it was not reasonable for a sophisticated commercial entity like Nationwide to rely on Weiss's statements in light of A&S' failure to make any significant payments for its orders. (Def. Mem. at 13). However, when the evidence of A&S' payment history is viewed in the context of the record as a whole, a factfinder could conclude that Nationwide's reliance on Weiss's representations was reasonable.

The undisputed facts show that in early April 2011, Weiss placed two orders from Nationwide totaling $118,901, and in mid-June 2011 Weiss placed two additional orders totaling $102,086. (Bredmehl Decl. ¶¶ 4-5). The record also shows that despite Weiss's

13

assurances that payment for the April orders would be made within 90 days, and that

payment for the June orders would be made within one month, A&S' first payment,

which occurred in July 2011, amounted to less than $11,000.  (Id. ¶¶ 3-7).  In August

2011, A&S made a second payment to Nationwide consisting of only $5,000.  (Id. ¶ 8).

Consequently, by the end of August, A&S still had an outstanding balance of over

$205,000.  (Id.).  Nevertheless, Nationwide allowed Weiss to place an additional order

for over $43,000 worth of books in mid-September 2011.  (Id.).

        The record further shows that by early October 2011, Bredmehl had become

alarmed by the size of A&S' receivable, which had grown to $248,880.93.  (Id. ¶ 9).

Accordingly, he spoke to Weiss to discuss the outstanding balance.  (Id.).  During the

conversation, Weiss declined Bredmehl's offer of a payment plan, and insisted that

Halloween sales in his stores were robust.  (Id.).  When the parties spoke again on

October 14, 2011, Weiss again represented that A&S was experiencing a successful

Halloween season, and promised to make weekly payments of between $10,000 to

$15,000 through the end of the year in order to reduce A&S' outstanding balance.  (Id.

¶ 10).  Based on these assurances, Bredmehl authorized an additional order for over

$30,700 worth of goods.  (Id.).  However, A&S subsequently made only four payments

totaling $42,086, leaving an unpaid balance of over $237,500.  (Id. ¶ 11).

        Although these facts could support a finding that Nationwide's reliance on Weiss's

assurances was unreasonable, when considered in light of other evidence in the record, a

factfinder could conclude that Bredmehl's decision to credit Weiss's statements was

justified.  In particular, as described above, Nationwide has presented evidence showing that the parties had a long-term business relationship over the course of which A&S had often been slow to pay for its orders, but had always ended up paying in full.  (Id. ¶ 2).  It also has presented evidence showing that throughout the parties' relationship, Weiss proved to be an honest and trustworthy businessman.  (Id.).  Furthermore, the record contains evidence showing that due to the Halloween-dependent nature of A&S' business, the company typically earned more than 60 percent of its revenues in the 10 days prior to October 31, and 40 percent of its total season revenues in the last 3 days prior to October 31.  (Weiss Aff. ¶ 5).  When viewed in the light most favorable to Nationwide, these facts could support a finding that Bredmehl had a reasonable basis for accepting Weiss's assurances of payment, and that it would have been reasonable for Bredmehl to believe that A&S would be able to meet its obligations to the plaintiff after the Halloween season concluded.  Therefore, Weiss is not entitled to summary judgment on the grounds that Nationwide cannot prove the reasonable reliance element of its fraudulent misrepresentation claim.

**v.      Claim Under Chapter 93A**

Finally, Weiss argues that he is entitled to judgment as a matter of law because Nationwide can prove nothing more than a breach of contract on the part of Nationwide, which is insufficient to support a claim against Weiss under Chapter 93A.  (Def. Mem. at 16-18).  Weiss is correct that "'a mere breach of contract,' without more, does not consti-tute an unfair or deceptive act or practice" for purposes of a Chapter 93A claim.  Incase,

15

Inc. v. Timex Corp., 421 F. Supp. 2d 226, 239 (D. Mass. 2006) (quoting Commercial

Union Ins. Co. v. Seven Provinces Ins. Co., Ltd., 217 F.3d 33, 40 (1st Cir. 2000)), aff'd,

488 F.3d 46 (1st Cir. 2007).  However, Nationwide's claim is based not on a breach of

contract, but on Weiss's alleged fraudulent misrepresentations.  As described above, such

a claim "can form the basis for a Chapter 93A claim."  Rodi, 389 F.3d at 20.  Because the

record raises issues of fact which preclude summary judgment for Weiss on Nationwide's

underlying claim for fraudulent misrepresentation, the defendant is not entitled to

summary judgment on Nationwide's Chapter 93A claim.


### C.   Nationwide's Request for Summary Judgment

Although Nationwide has not filed a cross-motion for summary judgment, it

argues that "the case against Mr. Weiss is so substantial, *on the basis of his evidence*, that

the trial court should consider granting summary judgment to NATIONWIDE under Fed.

R. Civ. P. 56(f)(1)[.]"  (Pl. Opp. Mem. at 6, 10).  However, this court finds that the

existence of disputed facts regarding A&S' ability to pay for its orders, Weiss's intent to

mislead Bredmehl, and the reasonableness of Nationwide's reliance on Weiss's

representations preclude summary judgment in favor of the plaintiff.

In support of its argument that summary judgment in its favor would be appro-

riate, Nationwide points to A&S' financial records, as well as its bankruptcy filings, to

show that the company had no reasonable prospect of paying the plaintiff for its book

orders.  (See id. at 3-4).  While those records indicate that A&S was heavily in debt, and

had unpaid obligations dating back to 2008, when viewed in the light most favorable to Weiss, the evidence does not compel the conclusion that A&S was incapable of paying for its orders or that Weiss had no intent to pay at the time of his conversations with Bredmehl.

As described above, there is no dispute that prior to 2011, A&S had always fulfilled its payment obligations to Nationwide, notwithstanding its long-term debts and uncertain financial condition, and that Bredmehl considered Weiss to be an honest and straightforward businessman.  (See Bredmehl Decl. ¶ 2).  Additionally, despite the company's indebtedness, A&S' financial records show that between 2007 and 2011, the company expanded its stores from 2 to 12, and experienced an increase in its total income stream from approximately $2.8 million in 2007 to approximately $3.5 million in 2011. (See Weiss Aff., Ex. A at 4).  Thus, the question whether A&S had the ability to pay for the orders should be resolved at trial.

This court also finds that when the facts are viewed in Weiss's favor, they support the defendant's assertion that his statements were not deceitful.  According to Weiss, Halloween season sales for 2011 ended up falling well below his expectations.  (Weiss Aff. ¶ 7).  Moreover, A&S' 2011 per store revenues ended up being approximately 17 percent lower than they were in any prior year in the company's history, a result which defied Weiss's projections for a significant increase in revenue.  (Id. ¶¶ 8, 10).  Indeed, if the per store revenue had been consistent with A&S' 2009 results, the company would have ended up with over $1.2 million in additional revenue during October 2011, the

month when A&S typically took in the bulk of its annual revenues.  (Id. ¶¶ 5, 12).  A factfinder viewing this evidence, as well as the evidence showing that A&S made six payments to Nationwide during the period from July 2011 through October 2011, could reasonably conclude that Weiss genuinely believed that A&S' prospects for the 2011 Halloween season were good, that Weiss fully intended to pay Nationwide for the book orders at the time he made the alleged statements, and that Weiss's statements to Bredmehl, while inaccurate, were not fraudulent.

This court also finds that Nationwide is not entitled to summary judgment because a reasonable factfinder could conclude that Bredmehl's reliance on Weiss's statements was unreasonable.  As described above, the record shows that Bredmehl repeatedly allowed Weiss to place additional orders with Nationwide based on Weiss's verbal assurances, without asking for financial information from A&S and despite his increasing alarm at the growing size of the A&S receivable.  (See Bredmehl Decl. ¶¶ 5, 7-10).  Even after August 2011, when Nationwide saw that A&S had paid only $16,000 on its outstanding balance of over $200,000, Bredmehl continued  to accept orders from Weiss for over $74,000 worth of goods.  (See id. ¶¶ 7-10).  When viewed in the light most favorable to Weiss, such evidence is sufficient to defeat Nationwide's claim that Bredmehl's reliance on the defendant's allegedly false representations was reasonable.

Therefore, Nationwide's request that this court consider granting summary judgment in its favor is denied.[4]

### III.  <u>CONCLUSION</u>

For all the reasons detailed herein, "Defendant Andrew Weiss's Motion for Summary Judgment" (Docket No. 23) is DENIED.  Additionally, this court declines to grant summary judgment to Nationwide pursuant to Fed. R. Civ. P. 56(f)(1).

   / s / Judith Gail Dein           
Judith Gail Dein
United States Magistrate Judge

---

[4]  In light of this court's conclusion that there are disputed issues of fact which preclude summary judgment for either party on Nationwide's claim against Weiss, Nationwide's argument that it is entitled to multiple damages under Chapter 93A is premature and must await trial on the merits.